**FOSTER-FORBES GLASS COMPANY,
Plaintiff,**

**v.**

**GLASS BOTTLE BLOWERS ASSOCIATION OF the UNITED STATES AND CANADA, AFL-CIO, an unincorporated association,**

**and**

**Glass Bottle Blowers Association Local Union No. 38, an unincorporated association, Defendants.**

**Civ. No. 1782.**

United States District Court
N. D. Indiana,
Fort Wayne Division.
Jan. 31, 1967.

William E. Roberts, Roberts & Ryder, Indianapolis, Ind., for plaintiff.

Lynnville G. Miles, Miles & Cummings, Indianapolis, Ind., for defendants.

## ORDER

ESCHBACH, District Judge.

This matter is before the court on cross motions for summary judgment filed by the plaintiff on August 12, 1966 and by the defendants on September 6, 1966. Plaintiff's complaint is in two counts, praying, in substance, for a determination that a certain portion of an arbitration award dated March 26,

1966 is beyond the scope of the issues submitted by the parties and is, therefore, null, void, and of no force and effect. Both counts present essentially the same issues, for purposes of the present cross motions.

The arbitrator found that plaintiff's unilateral change from fixed (stationary) work shifts to rotating shifts was a change of an established condition of employment which plaintiff [employer] was not at liberty to do under the master collective bargaining agreement and the local supplementary agreement thereto then in force and ordered that fixed shifts be reinstated.

In moving for summary judgment, defendants propose an argument, clear only to them, to the effect that there is no question for this court to determine in the instant proceeding inasmuch as the disputed matter [the number of hours and the character of plaintiff's work shifts] is "one of a class of cases subject to arbitration" and "procedural arbitrability questions are for the arbitrators and not the courts."

Plaintiff argues, on the other hand, that the only issue agreed to be submitted to arbitration was whether plaintiff violated the collective bargaining contract by changing from six six-hour shifts to five eight-hour shifts for those persons working as selectors in plaintiff's packing department. Plaintiff points to the fact that as to this issue the arbitrator expressly found that plaintiff was not in violation of the contract, but that the arbitrator went on to find a violation of the contract in plaintiff's change from a fixed to a rotating shift schedule. In deciding this latter issue, plaintiff argues, the arbitrator decided an issue that was not submitted and was not properly before him.

Both motions for summary judgment will be denied.

A motion for summary judgment may only be granted when it appears, on the status of the record before the court, that there exists no genuine issue of a material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

■ The issues raised by the complaint and by the cross motions for summary judgment present preliminary questions going to the extent to which the court may inquire into the exercise of jurisdiction by an arbitrator over the subject matter of his award. It is well settled that a court's role in reviewing arbitration decisions rendered pursuant to agreements to arbitrate labor controversies is tightly circumscribed, Local 7-644, Oil, Chemical and Atomic Workers International Union, AFL-CIO v. Mobil Oil Company, 350 F.2d 708 (7th Cir. 1965), and falls short of going into the merits of a controversy that, according to Congressional design, was meant to be resolved by the expertise of the arbitrator. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Congress has made manifest its policy of promoting industrial stability through the use of the collective bargaining process, 29 U.S.C. § 151, and, when implemented by agreement, the system of industrial self-government thereby created relies heavily on the grievance and arbitration procedures thereunder. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In this connection, Congress has stated that

"Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * * "

Section 203(d), Labor Management Relations Act of 1947, 29 U.S.C. § 173(d); and see United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

■ Although there is a presumption in favor of arbitration of grievances, except insofar as the parties have specifically excluded the matter from the scope of the arbitrator's jurisdiction, United

732

Steelworkers of America v. Warrior & Gulf Navigation Co., supra, arbitration of controversies remains consensual, drawing its very existence from an agreement of the parties. Accordingly, without going into the merits of the disputed matter, and without invading the exclusive interpretative function of the arbitrator, the court must, in the last instance, make the final determination as to whether or not a party bound himself to arbitrate a particular matter or class of matters. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). This overriding control over the scope of the arbitrator's jurisdiction is only logical, for, in contradistinction to the source of this court's power over the instant matter, 29 U.S.C. § 185, the arbitrator can only draw his authority from and to the extent of the parties' agreement. To argue, as the defendants do, that the present controversy is one of a class of cases subject to arbitration and that this is solely a matter for the arbitrator to decide assumes its own conclusion and is a bootstrap argument that, if allowed to prevail, would result in a wholesale abdication of power to the arbitrator and would undermine the very confidence in the arbitral process which is the cornerstone of industrial stability. See Cox, "Reflections Upon Labor Arbitration," 72 Harv.L.Rev. 1482, at 1516 (1959). Nor does the instant matter concern questions of "procedural arbitrability" under the principles laid down in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), to be decided in the first instance by the arbitrator, for that, too, rests on an assumption that the subject matter is already within the scope of the arbitrator's jurisdiction.

██ In resolving a dispute over the validity of an arbitrator's exercise of jurisdiction, the court must be guided by the fact that the ultimate question involves the construction of a contract— the parties' agreement to submit the matter to arbitration. Atkinson v. Sinclair Refining Co., supra. The controversy at

bar differs somewhat from the classical type of disagreement in that the difficulty is not over the arbitrability of plaintiff's change from a fixed to a rotating work shift, but is rather over the scope of the particular issues submitted to the arbitrator for decision. Of course, even on the assumption that a collective bargaining agreement's arbitration clause is not broad enough to embrace a particular matter in dispute, the parties may independently agree to submit the matter to arbitration, and the arbitrator's award and his authority over the particular subject matter would be fully binding on the parties. See Amicizia Societe Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805 (2d Cir. 1960). Thus, for present purposes, although the nature and breadth of the arbitration clause in the master collective bargaining contract may well ultimately help guide the court in its determination of the parties' intent, it is not the only factor that must be considered. The court must focus on the nature of the parties' agreement to submit the *work shift grievance* to arbitration.

██ In exercising its circumscribed interpretative function and in construing the parties' agreement to arbitrate, this court is not confined to a sterile construction of the collective bargaining agreement's arbitration clause, Retail Clerks International Association, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962), nor must it view in a vacuum the parties' rather cryptic 20-word submission statement to the arbitrator. Cf. Ficek v. Southern Pacific Company, 338 F.2d 655 (9th Cir. 1964). The parties' contract, or agreement to arbitrate, is not always found locked neatly within the four corners of an instrument. As in the case of any other contract, the intent of the parties with respect to an agreement to arbitrate a labor dispute is not necessarily manifested expressly, but may be implied from the parties' conduct and/or from the surrounding circumstances. See United

Steelworkers of America, AFL-CIO v. Northwest Steel Rolling Mills, Inc., 324 F.2d 479 (9th Cir. 1963), and cf. Ficek v. Southern Pacific Company, supra.

The court need not determine, for purposes of the present cross motions for summary judgment, the scope of the issues submitted to arbitration. The court need only find that there is a genuine issue as to a material fact in order to preclude a disposition of this cause by way of summary judgment.

■ That such a genuine issue as to a material fact exists in the instant case is readily apparent from the parties' own arguments. Plaintiff contends that "the fixed versus rotating shift question was never presented to the arbitrator nor did either party request the relief which he granted." Defendants argue, on the other hand, that the issues as formulated during passage of the dispute through the grievance machinery and as carried into arbitration included the fixed versus rotating aspects of plaintiff's work shifts. The court would point out that nothing has been presented that apprises this court of the nature of the controversy as it entered the grievance machinery and as it proceeded toward arbitration. Surely, the very submission statement, upon which plaintiff so heavily relies, could only have been drafted in light of a particular controversy that had not yet been resolved, and this requires a determination of the scope of that controversy—and of the issues discussed *prior* to the time when arbitration was reached. Indeed, the arbitrator himself recognized this difficulty, stating, at page 23 of his Award of March 26, 1966:

"The arbitrator notes further that in the consideration of this problem he was considerably concerned with whether his arbitral authority extended to the second issue, namely, the propriety of the change to a rotating shift. The submission statement is primarily concerned with the scheduling of eight-hour shifts, together with

the relief requested of reinstatement of the six-hour shift. The arbitrator is cognizant that under Article 30, Arbitration, his authority extends to and is limited by 'the grievance' and that he is expressly enjoined from adding to, substracting from or modifying the contract terms. *The text of the grievance makes reference to both the eight-hour shift and the rotating feature. Apparently, the parties so construed the grievance,* and, the company's Step 2 Answer on May 12, 1965, states:

"1. This grievance consists in two parts

"(a) Improper relief time.

"(b) Threatening to go to 8 hour rotating shifts"[.]

*"In light of all of the relevant circumstances the arbitrator feels that the issue as to the propriety of the change to a rotating shift is properly before him."* (Emphasis added)

Thus, it appears that a genuine disagreement exists with respect to the nature of the grievance as it arrived at the doorstep of arbitration. This factor is crucial, and the court cannot give an accurate and informed construction to the parties' agreement to arbitrate until evidence is adduced on these matters. This is not to say that the foregoing factor is to be accorded disproportionate weight or, indeed, any weight at all. It is merely to say that absent a determination of *all* factors that *may* be relevant in determining the scope of the matters submitted to arbitration, this court cannot say as a matter of law that either party is entitled to judgment. The dispute, thus far, still remains factual.

On the present status of the record, therefore, the court cannot determine the scope of the issues submitted for arbitration. Accordingly, defendants' motion for summary judgment is denied. Likewise, plaintiff's motion for summary judgment is denied.