**FORTUNE, ALSWEET AND EL-
DRIDGE, INCORPORATED,
etc., Plaintiff-Appellee,**

v.

**Richard A. DANIEL, dba Richard A.
Daniel Construction Company,
Defendants-Appellants.**

No. 82–6033.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1983.

Decided Dec. 28, 1983.

Richard D. Binder, Pasadena, Cal., for defendants-appellants.

Stuart H. Young, Jr., Los Angeles, Cal., for plaintiff-appellee.

**1356**

Before BROWNING, Chief Judge, and WALLACE and NORRIS, Circuit Judges.

PER CURIAM:

Daniel appeals from a district court order confirming an arbitration award in favor of Fortune, Alsweet & Eldridge, Inc. (Fortune), trustee of the Independent Contractors Grievance and Arbitration Trust. The district court held that Daniel's failure to make a motion to vacate the arbitration award within the appropriate statutory period barred Daniel from asserting defenses to Fortune's petition for confirmation of the award. The district court also found that by his conduct, Daniel had agreed to arbitrate the dispute. We affirm.

 State statutes of limitation apply to motions to vacate arbitration awards in labor cases. *San Diego District Council of Carpenters v. Cory,* 685 F.2d 1137, 1139, 1142 (9th Cir.1983). In California, the relevant statutory period is the 100-day period contained in section 1288 of the California Civil Procedure Code. *Id.* at 1139, 1142. In the case before us, Daniel failed to make a motion to vacate within 100 days after the entry of the arbitration award. Therefore, the only issue for the district court to decide was "whether the parties agreed to arbitrate the subject in dispute." *Sheet Metal Workers' International Association Local 252 v. Standard Sheet Metal, Inc.,* 699 F.2d 481, 483 (9th Cir.1983).

Fortune asserts that Daniel agreed to arbitrate under the terms of a Memorandum Agreement, which supplemented an earlier Master Labor Agreement signed by Daniel. Daniel, on the other hand, contends that he terminated all agreements with the Carpenters Union prior to the grievances that are the subject of this case. Fortune disputes the efficacy of Daniel's attempted termination. We do not decide whether Daniel's termination notice effectively ended any duty he may have had to arbitrate under the Master Labor Agreement and its successor agreements. The district court found that Daniel's continued payments to the Grievance and Arbitration Trust Fund for almost a year following his termination

notice demonstrated an implicit acceptance of the arbitration clause contained in the Memorandum Agreement. This determination may be questionable in light of *O'Connor Co. v. Carpenters Local Union No. 1408,* 702 F.2d 824, 825–26 (9th Cir.1983), and *Seymour v. Coughlin Co.,* 609 F.2d 346, 351–52 (9th Cir.1979). We need not decide the issue, however, since there is additional conduct which more directly sustains the district court finding that Daniel implicitly agreed to arbitration.

 Arbitration is undeniably a matter of contract and parties are bound by arbitration awards only if they agreed to arbitrate the matter. *See, e.g., International Brotherhood of Teamsters v. Washington Employers, Inc.,* 557 F.2d 1345, 1349 (9th Cir.1977). An agreement to arbitrate an issue need not be express; however, it may be implied from the conduct of the parties. *Ficek v. Southern Pacific Co.,* 338 F.2d 655 (9th Cir.1964), *cert. denied,* 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965). Daniel's conduct in the case before us amply demonstrates an intent to arbitrate his dispute with the Carpenters Union.

In response to a notice that an arbitration hearing would be held, Daniel's representative sent a letter to the Arbitration Board stating that it would represent Daniel before the Arbitration Board, under "Section 5(d) of the Independent Contractors Grievance and Arbitration Procedures." Daniel's representative attended the first arbitration hearing and stated that Daniel "would probably appear at the arbitration." He requested and was granted a continuance. Daniel's representation also attended the second arbitration hearing on this matter and listened to all of the evidence presented by the union. After the union had ended its presentation, Daniel's representative presented some evidence and asked for and received a second continuance "to secure witnesses to refute the evidence presented by the union." Two weeks later, Daniel's representative sent a letter to the Arbitration Board denying Daniel's obligation to arbitrate the dispute and refusing to attend any further hearings. The arbitrator sub-

sequently rendered a decision adverse to Daniel.

 We have long recognized a rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result. *Ficek v. Southern Pacific Co.*, 338 F.2d at 657. Although Daniel attempted to deny the authority of the arbitrator prior to the arbitrator's final decision, we find the principles announced in *Ficek* equally applicable to the present case. It would be unreasonable and unjust to allow Daniel to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months, shortly before the arbitrator announced her decision. The policy of the law is to support the enforcement of arbitration awards because arbitration promotes the speedy resolution of labor disputes. *Sheet Metal Workers' International Association Local 252 v. Standard Sheet Metal, Inc.*, 699 F.2d at 482, *citing Service Employees International Union, Local 36 v. Office Center Services*, 670 F.2d 404, 409 (3d Cir.1982). Allowing Daniel to reject arbitration at this late stage of the arbitration process would frustrate that policy.

We therefore conclude that there is ample evidence to support the finding by the district court that Daniel's conduct demonstrated he agreed to submit this conflict to arbitration and waived any right to object.

The order of the district court confirming the arbitration award is AFFIRMED.